Next case is Murray v. J.P. Morgan Chase, and for the appellant, Mr. Pibonoff. Did I pronounce that closely? Close enough. Okay. I respond to A.P. come over here. And for the appellee, Mr. Kaufman. You may proceed. You may please the court. Your decision in this case will determine whether or not, in the state of Illinois, a police officer would be able to come to your house with Brandon the repo man, tell you, turn over the keys, or I'll have you detained and get away with it. If that's okay, then you should affirm. I said meet to this panel, but it's not okay. That, you know, the constitutional prohibitions against a reasonable seizure under the Fourth Amendment that due process deprivation of property on the 5th and 14th are in effect, and the officers, police officers, are not allowed to conduct a curbside courtroom determining property rights of citizens. It's an interesting curbside courtroom in this case, particularly, because according to the police report, which was not available on the FOIA, but mysteriously appeared later on, after the case was filed, the police officer in question looked at the repossession order. Now, there was no repossession order, meaning order by court, in this case. There was some request of a, presumably, creditor. So, he looked at that, but he would not look, according to the unrebutted affidavit's complaints, at their receipts. So, it's an interesting curbside courtroom where only one side gets to present evidence, but not the other. I really have very little to say, in addition to what was already set out in briefs, because I know that in this courtroom, briefs get read before the oral argument. I will only very briefly summarize our position with respect to two different legal arguments that are present in this case, because we have an officer and we have a municipality. And, as quite thoroughly described in the case with which I supplemented the record, Hansley, the other Hansley, with respect to the officers, there is a simple two-pronged inquiry, and that is, number one, whether a constitutional violation occurred, and number two, whether the right was sufficiently well established. And, if the answer to those is yes, then qualified immunity is not available as a defense. I'm not going to go into the whole tempest and the teapot from the Supreme Court as to which of those prongs need to be addressed first. It doesn't really matter. When property is taken, I think that the first element is clearly met. So, the real issue, it seems to me, in this case, is whether or not the constitutional right is sufficiently well established. I think that whatever can be said about that, I don't think you could say as a matter of law that it's not. We know from Article 9 that any objection raised by the alleged debtor, if Brandon the repo man does not back down, then breach of the peace occurs. And, what the problem I have with the lower court opinion is that if you read it, it actually describes breach of the peace in progress, but fails to recognize that that's what was going on. In fact, I think one of the sentences from that opinion is that repossessions often become hostile. That is a description of breach of the peace at which repossession is no longer valid and becomes a theft, and the people who own the property become trespassers. And, if one were to apply the standard of review appropriate for summary judgment, not taking their side of the facts, under which they will win if those facts are true, but taking the competing affidavits and construing the facts in favor of the non-moving party, then the officer, by coming in and saying turn over the keys and basically taking the side of Brandon the repo man, contributed and participated in breach of the peace. They can't do that. That's one line of argument. With respect to the municipality, a different legal analysis applies. Because there, the respondeat superior does not apply. And so, one basically has to show some kind of wrongdoing by municipality to make them liable under section 1883. There are three ways, I think basically three ways, there are some exceptions I think, in that number one, you can show that they have constitutionally infirm policy. Number two, you can show that they have custom practice, which allows them to do unconstitutional things. And, number three, I think you can show that there was some decision by a person with decision making authority that resulted in the violation. Well, with municipalities, no municipality I know of has the unconstitutional policy. If they did before, they are no longer in existence. They don't say, well, let's violate the constitution. So, and the third problem obviously does not apply here either, because we have no evidence that somebody in the position of authority said, go there and have police officers present. So, we have to show, obviously, some sort of a custom and practice. We have an inference of that, and I think that under the standard of review appropriate to summary judgment, that inference must be made in our favor. Reasonable inference, assuming the panel agrees it's a reasonable inference. If that is a reasonable inference, it must be made in our favor. And the inference is this. My client is a pro se lawyer. This is probably one of the first cases when she actually was presented by a more or less real lawyer named me. Before that, she participated in many, many lawsuits. She stands up for her rights. She knows enough law to be dangerous. In this particular case, she knew enough to make a FOIA request. No police report. Okay. Strange, but it happens. We file a lawsuit. All of a sudden, a police report appears. And it is in the record. It's in her affidavit, contra affidavit to their motion of summary judgment. Moreover, the police report has the most peculiar wording, as if it was written by a lawyer, not by a cop, because I don't know many police officers who come to a house and say, I'm here just to preserve the peace. It's a civil matter. I'm not going to interfere. I'm just an observer in case things go up. No, they usually don't talk like that. But that language, we're here to preserve the peace, is present in the police report. A reasonable inference is that that police report was not there until we filed the lawsuit. And the reason it was made to appear is to present the appearance of a correct policy. The inference of that is that it was made to present an appearance of a correct policy because they actually had an incorrect policy before that. I mean, when you have a cover-up, you usually do a cover-up because there's something to cover. What if they have no policy? I don't mean policy in the sense of policy. I mean custom and practice. What if they have no custom and practice because it simply doesn't happen in that community, often enough for there to be a custom and practice? They get the first bite of the apple tree, then we'll lose. Counselor, is this the police report you're talking about? That's the only police report that existed? Yeah, the one which talks about, I saw the repo order and I went there to preserve the peace, yes. That's the one. It was attached, Your Honor. To the affidavit. To the summary judgment. There's no other police report that you're aware of? Yeah, we have nothing else. No, I think that if, my understanding of the law is that they get, unless one of the three, we're talking about municipalities. Right, right. Unless one of those three things, and possibly the failure to supervise, but that's kind of an iffy legal theory and my research indicated that that may or may not apply. But unless one of those things, three things applies, then the municipality gets off. Because you have to show some fault. They don't become liable just by virtue of employing the wrong agent. And so, obviously, they have no notice. I think they would not be liable. That's my understanding. I'm by no means... Conceding anything. No, no. I'm conceding everything. I'm by no means a 1983 lawyer. So for me, it's like a brand new area. I supervise for 11 years. So that's new stuff for me. But I think I understand enough in this particular case to know that under the standard of review, appropriate for summary judgment, the trial court below could not make statements such as, I think in the last sentence of the opinion, Oh, officer only preserved the peace. Oh, there's conflicting evidence as to whether he only preserved the peace or actually breached it. Because my clients categorically deny that he only preserved the peace. And they categorically state that he told them to turn over the keys and threaten them with arrest. They can't. If their version of facts is to be believed by a trial of facts, we will lose the trial. However, if our version of facts is to be believed, we just might win. And on summary judgment, my version of facts prevails over their version of facts. I learned that back in 1985. Can an individual police officer in an affidavit legally sufficiently say what the policy is of the municipality? So in other words, the officer in his affidavit made that statement. You didn't attack the affidavit as insufficient in the trial court, did you? No. I attack it now, but I did not attack it then. That's true. I don't know. I suppose if they have a policy, they certainly could attach. If one exists in writing, they certainly could attach it. Well, actually, I do think I did attack it. I did attack it. I believe on motion to reconsider, because their statement, oh, we have a policy, was kind of conclusive. It didn't really give any specifics of what their policy is and what it entails. I do believe that there was address. In your motion to reconsider, you think that's where it is? I'm not 100% certain, but I think major points were raised there. So I think the briefs cover pretty much every main and subsidiary issue in this case, and I think that the Sixth Circuit case is kind of on point and should be considered, because even though the actual facts there are not identical, the car was of a different color, and they dragged the lady out of the car by busting the windows. This is admittedly a more extreme circumstance. However, the general principle, I think, is identical. The general principle being when police officers come at the request of a recalled woman, whether it's Brandon or Bruno, as in another case, and do not keep neutral. Truly maintaining this, in which case on the continuum, as one of the cases described, on the continuum of action, they're absolutely not liable in doing the proper things. But when they start conducting curbside courtroom, looking at one order but not in another, and taking sides, that's a constitutional violation and a seizure. Thank you. You'll have additional time on rebuttal. Thank you, Your Honor. Mr. Kaufman. Thank you. May it please the Court. I'm Steve Kaufman. I represent the Village of Chattanooga, and also Officer Hoani. And we're going to ask that you affirm summary judgment in favor of the village and the officer. Let me address a couple of points that were raised in counsel's argument. First of all, reference was made to the police report. The argument was made that in this report, and basically the insinuation was made that this was a fabricated document late in the game in anticipation of summary judgment. And there is no evidence, nor could there be any evidence, in the record to establish that this was any sort of fabrication. And to the extent that insinuation is directed at me, I strongly object to such an argument. The suggestion is made that this police report makes reference to a breach of peace. And he said that at least twice, if not three times. In this report, there is no reference to breach of peace. It says, paperwork dispute between vehicle owner and repo. Repo, produce, repossess, order of paperwork. 127, which was the officer's number, advised vehicle owner, civil matter. No reference whatsoever to breach of peace. So this was not a fabricated document. In the lower left-hand corner of this document, there is a date of Friday, March 11, 2011. And I'll represent to the court that that document was printed out for me by the Chatham Police Department in anticipation of attaching it to the officer's affidavit, which was signed on April 1 of 2011. So that's the reason there's that date on that document. It is not a fabrication. On the issue of whether the officer himself in his affidavit could state what the policy was, or more accurately, what the policy was not of the village of Chatham, the officer has been employed by the Chatham Police Department since 2006, which was at least a couple of years before this incident occurred. He testified in his affidavit, which is uncontroverted, that there is no official policy, custom, or plan at the village of Chatham Police Department to provide official assistance or aid in repossession of automobiles by private parties. That's as much as, frankly, you can do to prove a negative, is to simply establish there is no policy. If he were deposed and asked the question, is this your first repo situation? And he said, no. How many have you had? Four. Would you describe how those were resolved? And in resolving those, there appeared to be, I mean, it was anecdotal. Each one was a little bit different. But there were some consistencies in how they were handled. Would that be a custom or practice? I would argue not. It would depend upon the circumstances, Your Honor. But there is no evidence in the record, and it's the plaintiff's obligation to bring forward such evidence in combating the motion for summary judgment. And he did not do so. You could have 15 repossessions, and I don't think it would necessarily rise to the level of a policy, because they could be under the exact circumstances of this matter. Well, it could be. Somebody might say, if it appears that there's a valid repossession order, I don't ask any more questions. And we can't speculate what that testimony would be, because there's nothing in the record. Agreed. And all we know is, and all we can deal with, is what we've got in this case, and that is his testimony that there was no policy. The only evidence is regarding this particular repossession. And most importantly, even though there are some differences, and I'm going to point out to you that those differences are immaterial between the affidavits in this case, both affidavits agree that this police officer showed up at the scene after the repo man got there. Okay? And as a result, unlike some of the other cases, like the Johnson case from the Seventh Circuit that they cite, the police officer didn't go along with the repo company to facilitate this repossession. This took place at 1 in the morning. The repo man showed up at this residence at 1 in the morning to take that car when there was a dispute that arose. And you can only imagine what that dispute would have entailed, at 1 in the morning in the driveway, perhaps, of this home. He was then called and then later came. But he was called by the repo man. He was called by the repo man, yes. And that's what his affidavit says, and that's what the report says. He was called because there was resistance to simply turning over the key in the face of the repo order that he had. Okay. Now, Mr. Kaufman, let me ask you a question there. Because under 3609, if there's resistance, isn't the repo man supposed to, say, get off? Get off the property and go to court? He might well, Your Honor. And that is a question for a different day because that is the action of the plaintiffs against Chase. Right. Because Chase was the one who hired this repo guy. He was their agent. And in this case, the plaintiffs have sued Chase. That case is still pending. Sure. And I understand that. But once the owner of the collateral or the property resists, it seems to me under the statute, based on allegations, which we don't know if are true, but are set forth in their affidavit, if they're resisting the repossession, it's one in the morning, the car is parked on their driveway, it's not parked on the street, it's on their property. To me, it seems like under our UCC, everything is supposed to stop. So if a police officer shows up and, according to their affidavits, says he's got a valid repo order, turn over the keys, and this will go easier, under the case law, it seems to me that that's a problem for your... I don't think so, Your Honor. Okay, tell me why not. And a couple of things. First of all, to charge this police officer with knowledge of the Uniform Commercial Code and constitutional law above the most basics, I think, is too much to expect of a village police officer. And the standard under qualified immunity, which we're relying upon, is whether the officer was violating clearly established statutory or constitutional rights of which a reasonable person would know. If Your Honor believes that a village police officer should have that knowledge of the Uniform Commercial Code and... How about all the case law? When you examine the case law, Judge, and we've cited authority in our brief for this proposition, you can only look to either U.S. Supreme Court decisions or Seventh Circuit decisions. You can't even look at district court opinions on the score. They've only cited two Seventh Circuit cases in... What about the Sandoff case or whatever, the U.S. Supreme Court case? The Sandoff case was this. That's when deputy sheriffs and the owner and manager of a mobile home park showed up to tear that mobile home off of its foundation and tow it to another lot. And the particular holding in that case, and that was a very difficult opinion to read, even for an attorney who's practiced for a number of years. Basically, the U.S. Supreme Court came down and said that that was a seizure under the Fourth Amendment, even though the owner's privacy was not involved. But in that case, the police officers actually accompanied the mobile home owners, mobile home lot owners, to the eviction. And the case specifically says that the police officers knew that the eviction was illegal. And then, most importantly, the police chief testified that he was there to prevent interference with the eviction. Much different case, much different facts here. We were called later to the scene to basically avoid these people shooting each other or getting into physical violence to avoid a breach of peace, which is exactly what he did. So I don't think that case is controlling at all, and neither is that Johnson case. Well, Johnson's clearly distinguishable. Yeah, that's when the auto mechanic tried to repossess the vehicle. But it seems to me, from reading the cases in this area, that there is a continuum. So, for example, the fact that the police officer shows up at the residence in Chatham in response to a call from the repo man is nothing. It's what he does when he gets there. So if he gets there and he stands by, and there is a breach of the peace where somebody is striking somebody else, he can lawfully arrest in that situation no matter which side is doing it. But he's preventing that from happening, Your Honor. Okay, but preventing it from happening by how? I think it makes quite a bit of difference that he was actually called to the scene after the dispute ensued because he was not there on behalf of the repo company to make sure that that happened. He got called because somebody in his jurisdiction had gone to a home to lawfully repossess a vehicle and a dispute ensued. Isn't there a dispute about whether it's being lawfully repossessed? She had receipts showing that she had paid for every payment. There's some dispute between them over the paperwork, and that's what the police report says. Let me do this because I think this is important because I understand that your review is de novo, and so you need to take a look at the affidavits, the one filed by Officer Polanyi and the two by the plaintiffs, and you have to look to see is there a material, emphasis on material, issue of fact created by those affidavits, and I think not. I think I'll answer your question, Justice Polk, in the process of reconciling these affidavits. First of all, per even the plaintiff's affidavits, the officer came to the property after the repo people. They didn't call him, clearly. It's not mentioned in their affidavit. The plaintiffs did not call him. Per the officer's affidavit, Brian, the repo man, called him, and this is one in the morning in April, and you can imagine him coming to that situation in that residence in a suburb of Springfield, and the Murrays and the repo man are standing in the dark arguing over whether or not he's entitled to get that car. When the officer shows up, he is shown by the repo guy a repossessed order, is how he describes it. Mr. Coffman, who cares what he's shown? That's the issue. Whether he's shown anything or he's shown papers, he's not there to make a determination about whether the repossession is lawful. I think it makes a difference, Justice Pope, in terms of the reasonableness of his actions, because he's a gentleman who has been shown and is showing a repossessed order to a police officer in the face of two citizens who are upset that this car has been taken. So under the reasonableness standard, he's entitled, I think, to credit the paperwork that he has shown by the repossession guy. Of course, then they say they have their paperwork and he won't look at it. Right. And you can imagine the stack of paperwork handed to him by Mrs. Murray, saying, look, we've paid the bills, we've paid the bills. He's standing there with a flashlight. How can he make that determination that that's a repossessed order? That's the point. Mr. Coffman, I think that's their point, that he shouldn't be making a determination one way or the other. But my point, Your Honor, is that you have to establish a reasonableness standard, and that's what the cases speak to in the issue of qualified immunity. But there's a difference between a reasonableness standard and a reasonable standard in terms of thinking, this police officer is trying to do the right thing. But, I mean, nice person, good officer, and an officer in an established police force. Not a village police officer. It may be the village of Chatham, but his standard would be the same as if he was a patrol officer in Peoria or Springfield. I agree. And what he's trying to do is diffuse the situation. I agree. And in a colloquial or a practical sense, what he did may have been the best thing that anybody could do for the quality of life in that community. But that isn't the standard. The question is, did he go one step too far in trying to be a good keeper of the peace and make that decision, which then put him in the position of not being impartial? And I don't think he did. I don't think he went one step too far. Well, how do we decide that when the other side has this affidavit that says, I have papers, too, and I agree with you. I wouldn't want to be looking at them under a flashlight, and you have to turn over the keys. Yeah. Basically, he said in his affidavit, or they say in the affidavit, that he said, they have a valid repossession order. You have to give them the keys. He was reasonably interpreting the law as he saw it because he had what he considered to be a repossession order. What is a repossession order, anyway? I don't know. If you don't know and I don't know, and Mr. Finloff doesn't know, and Justice Polk doesn't know, and doesn't even know what it looks like, why would it mean anything? The important thing is that he, in his mind, felt that this was a valid repossession. And so he kept the keys by indicating to them that they have the valid repossession order. Every police officer that conducts a search in a criminal case thinks, I think I've got enough. And then the case gets litigated and somebody says, you didn't have probable cause. Yeah, but this is a 1983 case, Your Honor. I understand the difference. I'm saying that my intent, and me being a good person and a well-trained police officer, if confronted with something like this, may make the wrong decision. Well, and maybe he did. But that's why we have a lawsuit here by the plaintiffs against Chase. But to drag the village of Chatham and the police officer in this, I think is unfair and I think it's contrary to the law and I think he's entitled to qualified immunity for what he did in good faith and as a reasonable police officer to keep the peace in Chatham. Mr. Kaufman, it seems to me that you're saying he acted reasonably and that's how you look at it. To me, that's not really quite where we are. You look at, to me, it would be interesting to see how officers are trained when they go through the police academy. With respect to repossessions, so in other words, during the training, based on the case law, it seems to me that an officer would be trained, if you're called to a repossession situation, you're there only to keep a breach of the peace. You do not make a determination about which side is correct. And if there's a breach of the peace, you have to instruct the repo man to get off the property and take it to court because that's how these issues get resolved if there's a dispute. And all you can do, Your Honor, and all of you can do is deal with the record before you. And there is no record that was developed by the plaintiff and it is their burden of proof, it is their obligation to develop the record that he was trained in a certain way and did not comply with that training. Well, no, because what they've alleged is he did certain acts that are violative of their constitutional rights if taken as true. And really what we have here, and you can see by the give and take, it seems to me there's a disputed fact about what actually happened at the scene and what he did and what he said to the plaintiffs. They put in their affidavits that he told them to turn over the key. There's nothing counter to that in his affidavit. And what I'm saying is that I think that that's immaterial. I think that when he said they have a valid repossessed order, in my opinion, you need to give them the keys, all right? He was acting reasonable and I think he's entitled to qualified immunity under that score. And I think a close reading of those affidavits indicates that they're not in conflict and you can even attribute the truth of their affidavits, as I acknowledge you have to do in looking at this de novo and still rule in favor of the village and the police officer. Thank you, Mr. Koffman. Thank you. Bo? Yes. I misspoke. I didn't mean to say whatever I said. I meant to say civil matter. That's what the language, breach of the peace. I didn't mean to say breach of the peace on the police report. I meant to say civil matter. That's what the language is in the police report and in the affidavit. The police report and affidavit of the officer track each other in referencing the civil matter. It is not correct, and I disagree with counsel's assertion, that there is no evidence in the record that the police report was not a post facto fabrication. In fact, I know exactly where in the record the evidence is contained. It's in the last paragraph of Sharon Murray's affidavit, which describes how she made a FOIA request and was told that no such report exists. That is evidence. So I think it is a reasonable inference. It's a disputed fact. No question about it. We have disputed facts here. All over. And the panel is correct in that, I'm sorry, I disagree with counsel's assertion that the affidavits of the parties are somehow reconcilable. They can be reconciled. One side says, I came there and said it's a civil matter and did nothing. The other side says he told them to turn over the keys and moreover threatened them with arrest. That's not reconcilable. Counsel referenced immaterial differences. Those differences are not immaterial. They're extremely material. Because accepted as true per standard of review, the inference is that the officer actually facilitated immaterial possession. And I agree with counsel when he described what transpired that night as dispute arose. That's colloquial for breach of the peace occurred. Because I think I put it in my brief and then there was a huge footnote in the Sixth Circuit case listing all the cases that stand for the proposition that when a person pulls a Nancy, as in Nancy Reagan, just say no, and moreover not only just says no but starts arguing, that's breach of the peace. And indeed, under Article 9, the report man must back out. Now, if an officer comes in and finds this circumstance, this going on, if they really meant to keep the peace and treat it as a civil matter, what he should have done was to say, Mary's in the house. Brandon, out. Don't touch the car. Peace preserved. Even-handed. Instead, he facilitated. If the facts of the plates of sacrifice have to be taken through, he became a repo man. Brandon's right hand. Now, they also know, they do know, that what they did was wrong and unreasonable. And the reason we can assume that, the reason their inference of that, is because they studiously put in the report and in the affidavit, it was just a civil matter. Now, police officers don't usually talk like that. I can understand that being in an affidavit, because affidavits are customarily prepared by lawyers. I'm not sure I accept that proposition, Counsel, because having worked with police for many years, I do think that when they're called to a scene and there's a dispute and it's about a civil matter, they say that to the people. This is a civil matter. It's not a matter for the police. You would be surprised, Justice Paul, to know that I, in my practice, get a call maybe once a month. It was the same story. My car was reported. The cops came. They told me to give it back. In my experience, when you have a repo, for whatever reason, I don't know why, I think they want to uphold the law, and I think they are bright and outstanding citizens, and it irks them that people don't pay. And so, when people don't pay and there is a repossession in progress, I think that for whatever reason, they always invariably take the side of a repo man. I've never once heard the story of a police officer taking the side of the deputy. Well, you probably would. There would be no reason for you to do that. That's true. I suppose my clients are also selective. But the point of the fact is that it happens all the time. I just get one phone call after another after another. And I see that there is a big red light here, so I guess I should turn it off. Thank you. We take this matter under advisement and stand in resistance. Thank you.